**SENT**
DUSTIN R. MARCELLO, ESQ.
Nevada Bar No. 10134
**PITARO & FUMO, CHTD.**
601 Las Vegas Blvd. South
Las Vegas, Nevada 89101
Phone: (702) 474-7554
Fax: (702) 474-4210
Dustin@fumolaw.com
Attorney for Defendant Gerald Delemus

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | CASE NO.: 2:16-CR-00046-GMN-PAL |
| | ) | |
| | ) | |
| | ) | |
| GERALD DELEMUS, | ) | |
| | ) | |
| | **)** | **SENTENCING MEMORANDUM AND** |
| | **)** | **LETTERS OF SUPPORT OF GERALD** |
| | | **DELEMUS** |
| Defendant. | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

**COMES NOW**, the Defendant, Gerald Delemus, by and through his attorney of record, Dustin R. Marcello, Esq., and hereby submits the following memorandum in support of sentencing pursuant to 18 U.S. Code § 3553.

This Memorandum is in addition to any other pleadings on file herein and oral argument at the time of sentencing as permitted by this Honorable Court.

-1-

## INTRODUCTION

Before the Court is Gerald Delemus ("Delemus"), a sixty-two year old resident of the State of New Hampshire.  Delemus endured a difficult childhood growing up in abject poverty, but has never broken the law.  He moved out and began living on his own at the age of sixteen while still attending high school.  After he had graduated, Delemus joined the United States Marine Corps where he achieved the rank of Sergeant, earning two Good Conduct Medals, a Meritorious Mast, and a National Defense Service Medal.  For the last forty-five years, Delemus has supported himself and his family as a builder and contractor.  He is devout in his faith and support of his church.  Delemus regularly donates to charity, volunteers to assist the homeless, and sponsors needy families in foreign countries.   While in custody, Delemus has been nominated for an award and, along with a Correctional Officer, administered CPR in an attempt to save a dying fellow inmate.   The numerous letters of support from members of his community show Delemus to be compassionate, peaceful and a man of integrity.

Probation noted there is no identifiable victim since Delemus did not cause injury to any persons, and caused no damage to property. Each person who comes before a Court for sentencing is considered a unique study in the human condition.  A sentence handed down by a Court is to be fair and just; driven by the unique characteristics of the person and the distinct circumstances of his involvement.  The events giving rise to this case are rife with political agendas and ideological beliefs.  However, Delemus came to Nevada to seek fair compromise and to protect people from harm.  Delemus came to Nevada seeking justice.  Let us hope he finds it in this Court.

///

## II.

## TERMS OF THE NEGOTIATION

Delemus has pled guilty to Count 1 – Conspiracy to Commit an Offense Against the United States in violation of Title 18 U.S.C. Section 371; and, Count 16 – Interstate Travel in Aid of Extortion in violation of Title 18 U.S.C. Section 1952 (a)(2).  The Base Offense Level with no adjustments is 18, corresponding to a sentencing range of 27-33 months.

The Parties agreed to upward adjustments of 15 levels, applied as follows:

- + 5 pursuant to USSG. §2B3.2(b)(3);

- + 3 pursuant to USSG §3B1.1;

- + 5 pursuant to USSG §3A1.4, comment n. 4; and,

- +2 pursuant to USSG §3C1.1.

Based on the agreed to upward adjustments, the stipulated adjusted offense level is 33.

The Parties further stipulated to downward adjustments to be applied as follows:

- -3 pursuant to USSG §3E1.1(a) and (b), and,

- -4 pursuant to USSG §5k3.1.

The Total Offense Level stipulated to is 26.  Delemus has 0 criminal history points placing him in Category I.  Referring to the 2016 Sentencing Guidelines, the applicable guideline range under the terms of negotiation is 63-78 months.

///

-3-

## III.

## SENTENCING CASE LAW

It is "uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings" and to impose a sentence tailored to the facts and circumstances of each case. *Gall v. United States*, 552 U.S. 38, 52 (2007) (quotations omitted). This requires a close examination of the mandatory sentencing factors so that the sentence is "sufficient, but not greater than necessary" to serve the purposes of sentencing. 18 U.S.C. § 3553(a) (2015).

Accordingly, the Sentencing Guidelines are not mandatory, they are advisory only, and the Supreme Court has declared that a sentencing court may not presume that a sentence within the Guidelines range is reasonable. *Nelson v. United States*, 555 U.S. 350, 352 (2009); *Rita v. United States*, 551 U.S. 338, 351 (2007).

When sentencing a defendant, a court is obligated to engage in a three-step process. First, the Court must correctly calculate the advisory Guideline range. Second, the Court must determine whether any departures are appropriate. Finally, the court will consider all relevant sentencing factors to come up with a reasonable sentence that is sufficient but not greater than necessary. *See Gall*, 552 U.S. at 49–50; 18 U.S.C. § 3553(a); U.S. SENTENCING GUIDELINES MANUAL ("USSG") § 1B1.1 (2015).

///

# IV.

## THE APPROPRIATE GUIDELINES RANGE

Pursuant to USSG §2B3.2, the base offense level for the offenses to which Delemus has pled guilty is 18.  His criminal history points are 0, placing him in Criminal History Category I. The guideline range for an offense level of 18 with no criminal history points is 27-33 months. The following is offered in response to the differing calculations made by United States Probation Officer Brian Blevins ("Probation") in the Presentence Investigation Report ("PSR") and the conditional request by the Government to deny downward variance for timely acceptance of responsibility.

### A.  Upward Variances

The PSR does not apply a five-level increase under USSG §3A1.4, comment n. 4., but provides a recommendation to the Court to implement the upward variance.  The Parties have agreed to the application under Comment 4 and agree it should apply under Part (1) of Comment 4 of USSG §3A1.4, which provides the upward departure may be applicable in cases where an offense is to intimidate a public officer, other than offense enumerated in 18 U.S.C. § 2332b(g)(5)(B).  The offense, in this case, is not enumerated in 18 U.S.C. § 2332b(g)(5)(B); and as such, it was subject to proper agreement between the Parties and should be applied under USSG §3A1.4.

### B.  Downward Variance for Early Resolution

Counsel reads the Government's Memorandum as seeking to move for a 4-level downward variance under its early resolution program under USSG §5K3.1; but only if, the Court imposes the 5-level upward variance discussed above.  Since Delemus has agreed to

application of 5-level upward variance under USSG §3A1.4, it is understood the Government will motion for a 4-level downward variance under USSG §5K3.1.

### C.  <u>Acceptance of Responsibility</u>

Application Note 3 to USSG §3E1.1 states the following constitutes "significant evidence" of acceptance of responsibility: (1) plea of guilty before trial; (2) truthful admission of the elements of the offense; and (3) truthful admission, or at least no false denial, of "relevant conduct." The 9th Circuit has held that these three pieces of evidence now have "significant" probative value for purposes of establishing "acceptance of responsibility," and "insignificant evidence cannot outweigh a plea of guilty before trial, truthful admission of the elements of the offense and absence of a false denial of technically relevant conduct." *U.S. v. Vance*, 62 F.3d 1152 (9th Cir. 1995).

Here, the Court denied withdrawal of the plea based on there being a plea of guilty before trial and admission to the elements of each of the offenses supporting the plea.  The basis for the motion to withdraw plea rested did not rest on denying actions but was instead based on Delemus' 6th Amendment right to have counsel adequately apprise him of the legal charges and assist in pleading with full knowledge of the law and facts.  At the very least, there has been no false denial of facts only statements of intention that the Court has determined were irrelevant under case law supporting the plea by Delemus.

No recognition should be given to the argument by the Government claiming Delemus should be denied variance because the Government was, "forced to expend resources in opposing his Motion."  *See Government's Sentencing Memorandum*, p. 20.

How can it reasonably be argued the 10-pages of boilerplate law in response, somehow diverted "valuable resources" in a manner justifying denial of the downward variance for acceptance?[1]  This case, from its' inception by the BLM to this prosecution, has never seen a limitation in the expenditure of resources.  The cost of the BLM operation and prosecution is likely in the millions of dollars.  Just recently, the Government received the right to dismiss two charges with the express purpose of trying the defendants again should they be found not guilty of the remaining counts.  No expense spared and no cost too high. It is unknown where the cows related to this case are, but they will likely be the most expensive hamburgers ever consumed.

There will be no end to the cost and resources dedicated to this case, save and except if the co-defendants see the Court can be just and merciful by imposing a fair sentence. Therefore, it is respectfully requested the Court provide the total offense level calculation agreed to by the Parties to include a three-level downward variance for acceptance of responsibility.

### D.  **Final Guideline Range**

Based on the forgoing, Delemus asserts the proper guideline calculation in this case for a total offense level should be 26.  Delemus asserts the proper guideline range for a total offense level of 26, with 0 criminal history points is 63-78 months.  Below, Delemus provides further argument for a fair and just sentence based on personal factors and sentencing goals of Title 18 U.S.C. § 3553 (b), and USSG §5K2.0 (a)(2)(A).

///

---

1 See Doc. #1769

## V.

## FAIR AND JUST SENTENCE

After calculating the correct Guideline Range, a court must "impose a sentence sufficient, but not greater than necessary," in light of the relevant sentencing factors and explain the sentence it imposes. 18 U.S.C. § 3553(a); Gall, 552 U.S. at 49–50. This last step is critical to achieving the objectives that Congress intended by establishing a "fair sentencing system" with "honesty in sentencing," "reasonable uniformity," and "proportionality" in light of the facts and circumstances of each particular case. USSG ch. 1, pt. A(1)(3) ("The Basic Approach").

The relevant sentencing factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the crime, to afford adequate deterrence to criminal conduct, to protect the public from the defendant, and to provide the defendant with needed educational or vocational training; (3) the need to avoid unwarranted sentencing disparities among similar defendants and similar conduct; and (4) pertinent policy statements. 18 U.S.C. § 3553(a).[2]

### A.  Nature and Circumstances of the Offense

No matter how the Government wishes to spin the facts of this case, the bottom line is that Delemus: (1) did not point a gun at anyone, (2) did not threaten anyone, (3) did not intimidate anyone, (4) was not present during the incident on April 12th, (5) had no knowledge or involvement with the events of April 12th, and (6) did no harm to person or property.  The United States Probation Office agrees with this assessment in Paragraph 47 of the PSR by acknowledging: "There are no identifiable victims in the case."

---

2 Other factors include the types of sentences and ranges available, and the needs for restitution. Restitution has already been resolved. 18 U.S.C. § 3553 (a)(3), (4), and (7). Given the mootness or limited applicability of these other factors, they are not addressed in this memorandum.

Delemus loves this Country and respects the Government.  He has been politically active for most of his life including running for mayor of Rochester, New Hampshire in 2009; organizing and holding presidential and congressional primary debates; acting as New Hampshire Co-Chair for President Trumps Veteran Committee; being elected one of only 2500 National Convention Delegates; and, establishing, along with 9 other New Hampshire Legislatures, the 912 Organization dedicated to improving education in the State.

Delemus believes in Government, but as is required of all conscientious men, there is an obligation to do what you consider to be morally right.  By its very nature, civil disobedience is an affront to civilized society. However, it is sometimes an absolute necessity for the individual to exercise his conscience and morality to reconfigure the relationship between the Individual and the State in a peaceful manner.  In this case, Delemus was under the mistaken but justifiable belief that an injustice was occurring and that law enforcement, the Bundy family, and their children, were in danger of harm if he did not act.

In early April of 2014, Delemus read an article from the news media site "The Drudge Report".  The Drudge Report isn't exactly a typical point/counterpoint news source and painted the events at the Bundy ranch in a very hostile tone.  The headline read "Heavily-Armed Feds Surround Nevada Ranch."[3]   The article claimed the Government, not just enforcing its rights to claimed property, but attempting to take the Bundy ranch and property by force. It is widely agreed the Drudge Report recklessly fueled the confrontation.[4]

///

---

3 http://www.drudgereportarchives.com/data/2014/04/11/20140411_164038.htm

4 https://www.mediamatters.org/blog/2014/04/11/drudge-report-recklessly-hypes-confrontation-be/198859

Regardless of the report, Delemus, like many Americans, was surprised to see images of BLM agents in full tactical gear, carrying M-16's, and holding snarling attack dogs while other agents tasered protestors and forcefully arrested members of the Bundy family.[5]   There was certainly a counterpoint to these events, but most people were surprised to see such a massive use of force to address a dispute over trespassing cattle.   Before this incident, it is unlikely people would have considered the possibility of a park ranger enforcing park rules with a sniper rifle.

After being morally offended by the images and stories casting Cliven Bundy as a long time rancher forced from his land, Delemus contacted Cliven Bundy on April 8, 2014.   The Government interprets this conversation as nefarious and subversive, claiming talk of "bodies" being needed, equated to soldiers going to war.[6]   However, here is the actual quote from Delemus the Government bases this claim on:

> " . . . I know sometimes just the number of people who show up at an event can change the direction the government is going, especially when there's politicians involved because if they think they're going to lose enough votes, they might actually start paying attention and change their vote.   And I'm a guy who wants to run through the system.   I believe the system if in fact we have enough people who will stand up and work within the system you can change things through the system."

Government's Exhibit #1 page 18-19.

This quote hardly supports the Government's conclusion or claim that Delemus is "anti-government."   Delemus is far from anti-government.    He has held sought multiple political offices and has sought change through political action committees, political organizations, and

---

5 https://www.youtube.com/watch?v=JBpzB86SA_w

6 *See Government's Sentencing Memorandum*, p. 14.

political activism.  By the Government's admission, what it finds subversive is Delemus' adherence to the paramount authority of the Constitution. *Government's Exhibit #1*, pp. 14-15.

However, this is hardly subversive as it is the same order of priority this Court adhered to in taking the oath of office.  28 U.S. Code § 453.  Allegiance to the Constitution is not subversive.

Delemus did not go to Nevada to "fight" with BLM, he went because he believed injustice to be present.  Like Paul, he was required to respond to the call for aid.[7]  He went to seek compromise and remedy the perceived injustice.  Although there are people that ridicule the Bundy claim of "ancestral ownership," and denial of rightful ownership title as to the Federal Government, there is no denying the events and narrative created a sense of unfairness and injustice sufficient to stir ordinarily passive men.

This Court and the Government will accurately say that Delemus was unreasonable in his beliefs of injustice because the BLM was acting with proper authority.  However, there has to be some recognition of the history of the area in dispute.  Besides the Bundy family, there are other ancestral and historical claims to the Bunkerville Allotment.  Nevada, known as the "Battle Born State," is aptly named with a long history of the Federal Government gaining control of the territory and the land at the end of the sword.  From the concession of Mexico to end the Mexican-American War;[8]  to the creation of the State during a Civil War; to the taking

---

7 "Just as the prophets of the eighth century B.C. left their villages and carried their "thus saith the Lord" far beyond the boundaries of their home towns, and just as the Apostle Paul left his village of Tarsus and carried the gospel of Jesus Christ to the far corners of the Greco Roman world, so am I compelled to carry the gospel of freedom beyond my own home town. *Letter from a Birmingham Jail,* Martin Luther King, 1963.

8 *El Tratado De Guadalupe Hidalgo*, 1848. *Treaty of Guadalupe Hidalgo*, 1848.

of indigenous land from the Western Shoshone Nation;[9] to the denial of equal footing with the original 13 colonies,[10] the consistent theme is that the territory was taken and continues to be denied from the people living in those territories.  A new twist on the discovery doctrine to apply in modern times.[11]  To most, this will seem trivial, but for families and indigenous people who have been born on the land, worked the land, and been buried in the land, the idea the Federal Government will order agent's to enforce a claim of ownership at the barrel of a rifle can cause a feeling of resentment and frustration no matter how righteous the claim of title.

The Government, not surprisingly, believes all persons who contest its authority on any matter and in any way are a threat because the Government alone represents the will of the majority.  However, "moral issues must be decided by the individual and his conscience, not by the majority through government."[12]  Government by definition is an impersonal and amoral entity composed of individuals who possess the morality and conscience to do what it is right.[13]

---

9 *W. Shoshone Nat'l Counsel v. United States*, 415 F. Supp. 2d 1201, 1207 (D. Nev. 2006).  The Western Shoshone Indians were dispossessed of the land took, valued, and then paid itself for the land to take title from the Western Shoshone Indians.  *Shoshone Nation*, 11 Ind. Cl. Comm. At 416; *see also TeMoak Band of W. Shoshone Indians v. United States*, 593 F.2d 994, 996 (Ct. Cl. 1979).

10 Nevada was admitted to the union by the following proclamation: "Now, therefore, be it known that I, Abraham Lincoln, President of the United States, in accordance with the duty imposed upon me by the act of Congress aforesaid, do hereby declare and proclaim that the said State of Nevada is admitted into the Union on an equal footing with the original States. – *Proclamation 19*, Pres. Abraham Lincoln.  However, it be found that although the original 13 colonies may be sovereign over the land within their borders, the Western states are not.  *See Nevada Constitution, "Ordinance"*; *see also U.S. v. Garnder*, 107 F.3d 1314 (9th. Cir. 1997).  Apparently all States are equal, but some are more equal than others.

11 The "Discovery Doctrine" was tenant of international law claiming title to "discovered" lands made by Christian Nations.  It granted title to the monarchy of the Christian nation making the "discovery" treating the indigenous people as only living on the land and unable to hold title. *Johnson v. M'Intosh*, 21 U.S. (8 Wheat.) 543 (1823)

12 *Civil Disobedience*, Henry David Thoreau 1849.

13 Id.

-12-

The Government rightly asserts that it represents the will of the majority, but it does not necessarily follow that the will of the majority is always the moral course.

Delemus did not bring guns with him as a threat or for intimidation.  During the conversation with Cliven Bundy, Delemus understood there to be BLM Special Agents in the hills around his house pointing sniper rifles at his children and grandchildren.

Delemus recalled prior incidents where the Government, even with the best of intentions, had engaged in actions that resulted in the death of innocent persons and children. Every statement attributed to Delemus included by the Government in their Memorandum, states that he did not want to harm anyone and was never going to attack first, but he did want the ability to defend himself.  In his words:

> "[m]y intention wasn't to go out there and fire a single round.  That was not my intention whosoever [sic] and but I've got to tell you is my foremost intention was not to let them intimidate or attack that family.  An if it took my life at that particular point in time, we only live so long anyways and if your're [sic] going to die, you might as well die standing up doing something for what you believe is right."

Government's Exhibit #1, pp. 23-4.

Delemus is not a violent person.  It is hard to understand why the Government thinks Delemus is so radical for being willing to give his life to protect the lives of children and his neighbor.  That is just who he is.  Attached, are numerous letters of support, quoted in part here as relevant here:

///

-13-

The Honorable Mark Warden, of the New Hampshire House of Representatives notes:

> "Jerry is well respected in our community.  He is a known as a strong supporter of the US and state constitutions.  He is anti-violence and pro peace.  This has been his message as long as I have known him."

> "Mr. Delemus has been a respected leader in our community as a volunteer, an organizer, and a man of faith.  He would not hurt anyone."

> Letter of support from Honorable Mark Warden, 5/18/2017

Longtime friend Jane Cormier states:

> "In all the years I have known Jerry, he has always been a kind and generous man, ready to give back to those less fortunate and those in true need.  I have never seen or heard Mr. Delemus show any violent or angry action toward anyone.  – Indeed, Jerry is known as a gentle soul and a man of high integrity.

> Letter of Support Jane Cormier, 5/16/2017

Patrolman Patrick Testerman articulates that,

> "Having known Mr. Delemus for several years, including during the time of the events for which he is being sentenced, I affirm that he is a non-violent man of outstanding character, a genuine asset to the community, and a person who believes deeply and acts selflessly as a peacemaker.  I further believe he has not only served a significant penance, but that has proven these aspects of his character in personality during his extensive pre-trial confinement, where he has led Bible Studies, cared for fellow prisoners and served as a calming influence in the most difficult of environments.

> Letter of Support from Patrick Testerman, Lieutenant Colonel, United States Air Force (Retired), Patrolman, Chichester Police Department; Associate Pastor, Faith Community Bible Church, 5/18/2017

///

-14-

In any nonviolent campaign, there are four basic steps: a collection of the facts to determine whether injustices exist; negotiation; self-purification; and direct action.[14]

Delemus only was in Nevada for the first step in validating the perceived injustice. He had no knowledge, involvement, or agreement to participate in the April 12th incident in the wash. When he left New Hampshire, he had no idea if anyone else, or just himself, would be at the Bundy ranch. When Delemus arrived in Nevada, he had no reason to believe the events of April 12th were as significant as he would later find out.

His understanding was that the Clark County Sherriff had spoken to the head of the BLM, who in turn agreed to stop operations. Delemus had no reason to believe it was anything other than a successful act of civil disobedience.

This erroneous belief was subsequently validated by public officials, including the Governor of the State of Nevada who plainly stated the BLM action was improper, and they supported the BLM decision to stop the impoundment operations. The exact quote from Governor Brian Sandoval, a former Federal judge in this District, stated:

> "No cow justifies the atmosphere of intimidation which currently exists nor the limitation of constitutional rights that are sacred to all Nevadans," Sandoval, a Republican, said. "The BLM needs to reconsider its approach to this matter and act accordingly."[15]

Likewise, Sen. Dean Heller told BLM director Neil Kornze that he believed the situation was being handled poorly and stated the following in the media:

> "I told him very clearly that law-abiding Nevadans must not be penalized by an over-reaching BLM,"[16]

---

14 *Letter from a Birmingham Jail,* Martin Luther King, 1963

15 http://www.foxnews.com/politics/2014/04/07/nevada-officials-blast-feds-over-treatment-cattle-rancher-cliven-bundy.html

16 Id.

During his time at so-called "Camp Liberty," Delemus didn't surveil Government employees or organize troops.   He was trying to contact the Sherriff and BLM officials to negotiate a compromise and get the parties to communicate.   Delemus had previously told Bundy, he would not interfere with the execution of any warrant or arrest.   Delemus met with the Sherriff and informed his staff that Delemus would take the responsibility to ensure law enforcement had access to perform any necessary duty.

Not having witnessed the events of April 12th, and seeing the general tone of Nevada officials over the incident, Delemus had no reason to suspect the significant impact to BLM Agents from the April 12th incident.   Had he known, he never would have continued his activities at the ranch.   The statements and actions of Nevada officials however seemed to confirm his suspicions of injustice.   This can be shown by comparing it Delemus' reaction to the Oregon incident. There, Delemus contacted the FBI to offer his services to attempt to negotiate an end the occupation of Government buildings because he believed it improper and a trespass.

**B.  Just Punishment**

There is a certain amount of vengeful appeal in punishing Delemus to "send a message" and deter people who protest the Government in the future.   However, history has shown punishment by the Government does not affect the behavior of future persons who feel the Government is oppressive; it's simply more evidence of the claimed oppression.   Delemus realizes that repetition of his behavior will only be counterproductive.   This case has been devastating to him and his family, he will lose nearly all of his constitutional rights in addition to the nearly sixteen grueling months in custody at the Nevada Detention Center.   Delemus previously broke his hip and required special sleeping arrangements for the condition.   His

confinement has been especially hard and painful.  The relative harm of his "operating patrols," making a few statements on Facebook, and looking scary in fatigues, has been sufficiently punished.

### C.  <u>Protection to the Public</u>

After release, Delemus will never break the law.  When this Court sentences him, he will never own a firearm or participate in any act of civil disobedience against Government action. He will follow whatever requirements this Court imposes and live by whatever limitations his conviction presents.  Delemus will continue to do what he deems is right and continue to exercise his conscience by refusing involvement or complicity in a government that enforces unjust policies,[17] but it will be with words and letters, rather than with protest and civil disobedience.

There is nothing in Delemus' past, which would indicate he is a danger in the future. Just as others throughout history, the call to aid was too loud to ignore.  Civil disobedience by its nature cannot be tolerated by a society of laws.  Silent adherence to unjust laws is not in the best interest of any moral person, but often times too great of a danger to the safety and sound governance of a society is presented in the name of civil disobedience.  In the 16 months he has sat in custody, freedoms taken, eating the same meal every day with no privacy and no family, Delemus has determined both the effect his actions had on those involved and the alternative courses of action he could have taken.  Delemus will never advocate, organize, assist or in any way champion the cause of civil disobedience based on use or threat of force.

///

---

17 As Thoreau would demand.

### D.  <u>Delemus as a Person</u>

Delemus grew up poor, without his father, who left when he was five years old.  Raised by his alcoholic mother in extreme poverty, Delemus was abused by his step-father.  By the age of sixteen, he got a job and moved into an apartment by himself while he finished high school.

Joining the United States Marine Corps in 1973, he was honorably discharged in 1977, attaining the rank of Sergeant.  During his time in the Marines, Delemus was awarded two good Conduct Medals, a Meritorious Mast, and National Defense Service Medal.

Delemus has been employed since he was sixteen.  He is a general contractor and has marketable skills as a cabinet maker.  Delemus is a modest man and does not have any assets of significance but has always provided for his family.

Delemus has held numerous political positions, including running for Mayor and Sheriff in New Hampshire.  He was the Chairman of a PAC and organized Congressional and Presidential Debates.  He was Co-Chair of the Veteran's Committee for President Trump and one of only 2500 people nationwide invited as a delegate to the Republican Presidential National Convention in 2016.  Delemus created the 912 Organization to assist with education local education issues, and on which, nine other State legislatures served.  Delemus' wife, Susan, is also in the New Hampshire State legislature.

Delemus, has been married to his wife Susan Delemus for over thirteen years.  Their 13th Anniversary will be just before sentencing before this Court.  Delemus also helps Susan care for her Mother who has advanced dementia and Alzheimer's.  Susan's Mother broke her hip just a day before this writing and Susan desperately needs Delemus' help to care for her mother.  Delemus is close to his family although these charges have largely alienated some family

members based on politics.  Delemus' close family are supportive of Delemus and just want him home.  No more protests or causes, they just want him home, and to live their lives.

Delemus is very active in his church. He has held the position of Senior Warden for three terms. The attached letters indicate he is a devote man of faith and committed to ideals of peace and compromise.  He is a member of New Hampshire's Right to Life church and volunteers on a regular basis.  Delemus financially supports a Rwandan family through an international ministry and a Muslim teenager in Bosnia. They help care for homeless people in their area in New Hampshire, and they financially support an overseas missionary.

Delemus is highly supported by his community.  He ran for Sheriff in 2014 and garnered nearly 40% of the popular vote.  Attached, are numerous letters from supporters that include legislators, chaplains, police officers, law enforcement personnel, nurses and teachers.  Delemus plans to continue to be actively involved in his community and will be in a unique position to provide guidance to people about his experiences in this case.

During his time at the Nevada Detention Center, Delemus has assisted other inmates, led Bible Studies, and provided counseling and advice on a peaceful existence.  This included eight baptisms.  Delemus even attempted to save the life of a fellow inmate by giving mouth to mouth recitation while CO did chest compressions.  Delemus has never had a write up and was recommended for an award while in custody.

In the future, he will actively advise individuals seeking to protest that this case serves as a warning of how not to redress the Government.  Delemus provides a unique ability to contribute to society and provide respect for the law without the need of "sending a message" through further incarceration.

///

-19-

# VI.

## SENTENCE RECOMMENDATION

Counsel recognizes that sentencing is a difficult decision-making process for most judges.  The Court has to weigh and balance a number of important considerations, most of which are statutorily mandated under 18 U.S.C. § 3553(a).

Counsel believes a sentence of 22-months is an appropriate sentence in this case.  It is acknowledged that this recommendation is significantly below that contemplated by the plea agreement, but is appropriate given Delemus unique personal background and proportional to the relative harm caused by his actions in this case.  Current Counsel believes it is also appropriate that the Court considers that many of the agreed to upward variances as being geared towards prosecutorial strategy and to achieve certain public perceptions rather than to address the proportional harm of Delemus' actions.

All across the country, rural communities have had tension between citizens and the BLM.  The majority, if not all of the defendants, participated in the events of April 12th, which by all accounts is the catalyst for this prosecution.  If a jury is convinced of their guilt, the sentence imposed should in proportion to the harm attributed by the Government to those actions during that incident.  Given that most of the defendants face significant mandatory time, such lengthy sentences would "send a message" and address those injuries.  However, a lengthy sentence, in this case, would be significantly disproportionate and unjust.

To create a persuasive message there needs to be a balance between punishment and fundamental fairness. The Court's decision will impact not only Delemus but other people and individuals in this case, in their perception of what is fundamentally fair. These citizens, and defendants, desperately want to believe in their Government and its institutions.

A just, but merciful sentence by this Court will be understood as a reflection of the judicial system's wisdom, and its inherent fairness and even-handedness.

In one of the courtrooms at the United States' Tenth Circuit Court, it is inscribed "Reason is the Soul of Law." Counsel takes that to mean that Delemus will not be sentenced based upon his politics, for his position on broad issues of public policy related to public lands, nor will he be sentenced based upon an inaccurate depiction or narrative found in certain influential media writings or the Government's memorandum. Reason, as does federal law, requires sentencing for who he is as a person, and for what he did and its relative severity and harm. It is on this basis that Counsel firmly believes a 22-month sentence is appropriate in this case.[18]

DATED this 27th day of May, 2017

Respectfully submitted

**PITARO & FUMO, CHTD.**

_/s/_  Dustin R. Marcello, Esq.
DUSTIN R. MARCELLO, ESQ.
Nevada Bar No. 10134

///

---

18 Lyman's predecessor: 'an example needs to be made' of ... http://www.sltrib.com/home/3322677-155/lymans-predecessor-an-example-needs-to ; accessed May 27, 2017

-21-

## **CERTIFICATE OF SERVICE**

I hereby certify that I an employee of PITARO & FUMO, CHTD., and that on the 27th day of May, 2017 I did cause to be served by CM/ECF transmission the foregoing Sentencing Memorandum to the following person:

Nicholas Dickinson
Nicholas.Dickinson@usdoj.gov

/s/  Kristine Tacata
An Employee of Pitaro & Fumo, Chtd.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT A**