**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> GERALD DELEMUS, ) <br> ) <br> Defendant. ) <br> ) | Case No.: 2:16-cr-00046-GMN-NJK <br><br> **ORDER** |

Pending before the Court is Petitioner Gerald Delemus's ("Petitioner's") Petition Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence ("2255 Motion"), (ECF No. 3365). The Government filed a Response, (ECF No. 3386), and Petitioner filed a Reply, (ECF No. 3419). For the reasons stated below, the Court **DENIES** Petitioner's 2255 Motion.

**I.** <u>**BACKGROUND**</u>

This case centers on an April 12, 2014 confrontation involving Bureau of Land Management ("BLM") Officers in Bunkerville, Nevada. (*See* Superseding Indictment 2:4–10, ECF No. 27). Petitioner's connection to that confrontation began on April 8, 2014, when he spoke to Cliven Bundy over the phone about actions by BLM officers supposedly affecting Mr. Bundy's ranch, family, and cattle. (2255 Motion 31:26–32:1, ECF No. 3365). From that call, Petitioner sought to assist Mr. Bundy. (*Id.* 20:1–21:4, 31:26–32:1). Petitioner accordingly drove to Nevada from his residence in New Hampshire, and he arrived in Nevada on April 13, 2014—one day after the confrontation in Bunkerville. (*Id.*); (Reply 6:5–11). According to the Superseding Indictment, when Petitioner arrived in Nevada, he "established armed checkpoints and security patrols to prevent and deter law enforcement actions against the conspirators

[named in the Indictment, such as Mr. Bundy], including recovering the extorted cattle."
(Superseding Indictment 36:7–20).

A federal grand jury issued the Superseding Indictment against Petitioner on March 2, 2016; and he appeared before the United States District Court for the District of New Hampshire on March 7, 2016, for a detention hearing. (Order Detention at 112, ECF No. 104-1). The New Hampshire Court ordered Petitioner detained pending trial and transferred to the District of Nevada. (*Id.* at 124). This Court then appointed Brian J. Smith, Esq. as his counsel. (Mins. Proceedings, ECF No. 222).

### A. Petitioner Pleads Guilty

Roughly five months after being transferred to Nevada, Petitioner appeared before the Court for a change of plea hearing. (Min. Order, ECF No. 634); (Mins. Proceedings, ECF No. 646). At that hearing, Petitioner pleaded guilty to two counts of the Superseding Indictment: Count 1, Conspiracy to Commit an Offense Against the United States, in violation of 18 U.S.C. § 371; and Count 16, Interstate Travel in Aid of Extortion, in violation of 18 U.S.C. § 1952(a)(2). (Mins. Proceedings, ECF No. 646) (describing the change of plea hearing that occurred on August 25, 2016); (Plea Agreement, ECF No. 649).

### B. Petitioner Attempts to Withdraw His Guilty Plea

On November 1, 2016, Brian J. Smith moved to withdraw as Petitioner's counsel, citing conflicts based on Petitioner's intent to withdraw his guilty plea. (Mot. Withdraw 3:1–10, ECF No. 919). The Court granted Smith's motion to withdraw on November 16, 2016, and then appointed Petitioner's current counsel, Dustin R. Marcello, Esq. (Order, ECF No. 988).

About two months later, Petitioner filed a motion to withdraw his guilty plea on the grounds that he was threatened with additional counts if he did not plead guilty, that he did not "knowingly and voluntarily" plead guilty, and that he was "factually and legally innocent of the charges." (Mot. Withdraw Plea 8:7–9:18, 15:13–14, 20:1–3, ECF No. 1298). The Court denied

Petitioner's motion on May 9, 2017, based on, among other things, the following: there was no factual basis to believe that the Government threatened additional counts if Petitioner did not plead guilty; and Petitioner's statements during the change of plea hearing showed that he knowingly and voluntarily admitted to facts that support a finding of guilt as to both of the offenses listed in his plea agreement. (Order 3:22–11:9, ECF No. 1953). On May 17, 2017, Petitioner moved the Court to reconsider its Order denying withdrawal of the guilty plea, which the Court later denied. (Mot. Reconsider, ECF No. 1974); (Mins. Proceedings, ECF No. 2031).

### C. The Court Sentences Petitioner, and He Appeals

On May 31, 2017, the Court sentenced Petitioner to sixty months imprisonment for Count 1 of the Superseding Indictment and twenty-seven months as to Count 16, consecutive to one another, for a total of eighty-seven months.[1] (J., ECF No. 2068). The day after sentencing, Petitioner appealed his sentence to the Ninth Circuit Court of Appeals. (Not. Appeal, ECF No. 2033). The Ninth Circuit dismissed that appeal on October 27, 2017, because of the "valid appeal waiver" in Petitioner's plea agreement. (Orders, ECF Nos. 2794, 3226).

### D. Failure to Disclose Evidence

On December 20, 2017, the Court declared a mistrial with regard to certain "Tier 1" defendants named in the Superseding Indictment due to the Government's failure to disclose evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 87 (1963), and related case law. (Trial Tr. 16-3 to 16-24, ECF No. 3049); (*see* Order 25:14–18, ECF No. 1098) (defining the "Tier 1" defendants as: "Cliven Bundy, Ryan Bundy, Ammon Bundy, Peter Santilli, and Ryan Payne"). On January 8, 2018, the Court further declared that the Government's actions warranted dismissal of the Superseding Indictment with prejudice as to Cliven Bundy, Ryan Bundy,

---

[1] At Petitioner's sentencing, the Court applied a total offense level of 29. (Sentencing Tr. 82:2–90:12, ECF No. 2151). That offense level accounted for a four-level decrease pursuant to guideline §5k3.1 for early resolution of the case based on Petitioner's guilty plea. (*Id.*). The Court discretionarily declined to apply a decrease for acceptance of responsibility. (*Id.*).

Ammon Bundy, and Ryan Payne. (Mins. Proceedings, ECF No. 3116); (Trial Tr. 21–22, ECF No. 3122); (J., ECF No. 3117).

### E. Petitioner Files the Instant Motion

On July 13, 2018, Petitioner again moved the Court to reconsider its Order denying withdrawal of his guilty plea, and he also sought a determination of whether his current counsel could pursue a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. (Mot. Reconsider, ECF No. 3287).[2] However, before the Court addressed that motion, Petitioner filed the instant 2255 Motion, (ECF No. 3365). The Court thereafter denied Petitioner's motion for reconsideration, and the Court did not opine on any potential conflicts with his counsel. (Order 2:20–4:3, ECF No. 3369).

In the instant 2255 Motion, Petitioner seeks to vacate his sentence largely on the ground that the Government's *Brady* violations regarding Tier 1 defendants involved evidence that should have been disclosed to him. (2255 Motion 14:1–32:24, 35:1–38:5, ECF No. 3365). Petitioner therefore argues that he lacked the ability to voluntarily and intelligently plead guilty. (*Id.*). He also argues that his prior counsel provided ineffective assistance. (*Id.* 32:26–34:28).

## II. **LEGAL STANDARD**

Pursuant to 28 U.S.C. § 2255, a petitioner may file a motion requesting the Court which imposed the sentence to vacate, set aside, or correct the sentence. *See* 28 U.S.C. § 2255(a). Such a motion may be brought on the following grounds: "(1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence was in excess of the maximum authorized by law; or

---

[2] On October 12, 2018, Petitioner filed a Motion for Hearing, (ECF No. 3364), seeking: (1) a hearing on his motion for the Court to reconsider its Order denying withdrawal of his guilty plea, (ECF No. 3287); and (2) a briefing schedule for Petitioner's instant 2255 Motion. On October 19, 2018, the Court, without a hearing, denied Petitioner's motion for reconsideration of its Order denying withdrawal of the guilty plea. (*See* Order, ECF No. 3369). The Court did, however, set a briefing schedule on Petitioner's instant 2255 Motion. (*See* Min. Order, ECF No. 3366). Petitioner's Motion for Hearing, (ECF No. 3364), is accordingly dismissed as moot.

(4) the sentence is otherwise subject to collateral attack." *Id.*; *see United States v. Berry*, 624 F.3d 1031, 1038 (9th Cir. 2010). "[A] district court may deny a section 2255 motion without an evidentiary hearing only if the movant's allegations, viewed against the record, either do not state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal." *United States v. Burrows*, 872 F.2d 915, 917 (9th Cir. 1989).

## III. <u>DISCUSSION</u>

In Petitioner's 2255 Motion, he seeks to vacate his sentence through three claims for relief: (1) the Government failed to abide by the evidentiary disclosure requirements stated in *Brady v. Maryland*, 373 U.S. 83 (1963), which violated Petitioner's "due process right to enter a plea knowingly and voluntarily with full knowledge of all defenses and exculpatory evidence in his favor"; (2) Petitioner's prior counsel was ineffective because he failed to request production of discovery that would have developed a defense for Petitioner, and failed to advise Petitioner on the essential elements of the charges against him; and (3) the Government prevented Petitioner from asserting a potentially valid legal defense by withholding material evidence. (2255 Motion 38:5–14:4, ECF No. 3365). The below discussion addresses each claim in turn.

### A. Petitioner's First and Third Claims for Relief

Petitioner's first and third claims for relief are substantively the same: he contends that the Government withheld evidence in violation of *Brady*, which prevented him from intelligently and voluntarily pleading guilty. (2255 Motion at 14:2–32:24, 35:1–38:5). The Court, however, does not find that Petitioner has proven a basis for relief on that ground.

#### i. *Withholding of* **Brady** *Evidence*

Under *Brady v. Maryland*, 373 U.S. 83 (1963), the Government must disclose evidence before trial that is "both favorable to the accused and 'material either to guilt or to punishment.'" *United States v. Bagley*, 473 U.S. 667, 674 (1985); *United States v. Ruiz*, 536

U.S. 622, 628 (2002); *Brady*, 373 U.S. at 87–88. The "touchstone" of evidence being "material" is that it "would have created a reasonable probability of a different result." *United States v. Jernigan*, 492 F.3d 1050, 1053 (9th Cir. 2007) (citing *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)) (quotations omitted). In other words, in order to receive relief for a *Brady* violation, such as a new trial, the defendant must show that the Government's suppression of evidence "undermines confidence in the outcome of the trial." *Jernigan*, 492 F.3d at 1054, 1057–58.

Ninth Circuit precedent instructs that a guilty plea does not entirely foreclose a defendant from raising a claim for relief under *Brady*.[3] *Sanchez v. United States*, 50 F.3d 1448, 1453 (9th Cir. 1995). The rationale is that a defendant cannot "intelligently and voluntary[ily]" enter a plea of guilty if the prosecution withholds "material information." *Id.* Nevertheless, "a *Brady* violation does not automatically entitle a defendant" to relief. *United States v. Nagra*, 147 F.3d 875, 881 (9th Cir. 1998). Rather, the defendant bears the burden of proving a "reasonable probability" that, "but for the failure to disclose the *Brady* material, the defendant would have refused to plead guilty and would have gone to trial." *Sanchez*, 50 F.3d at 1454; *Smith v. Baldwin*, 510 F.3d 1127, 1148 (9th Cir. 2007).

The test for whether a defendant would have refused to plead guilty and instead gone to trial is an objective one. *Sanchez*, 50 F.3d at 1454. This test "centers on 'the likely persuasiveness of the withheld information.'" *Id.* For example, in *Sanchez*, the defendant challenged his guilty plea under *Brady* by claiming that he would have asserted defenses of

---

[3] The Government argues that the Court should enforce the part of Petitioner's plea agreement where he "knowingly and expressly" waived "all collateral challenges, including any claims under 28 U.S.C. § 2255." (Resp. 8:14–9:6, ECF No. 3386). However, pursuant to *Sanchez*, that waiver provision does not preclude Petitioner from challenging the voluntariness of his guilty plea based on constitutional violations, such as that under *Brady*. *See Sanchez v. United States*, 50 F.3d 1448, 1453 (9th Cir. 1995) ("A waiver cannot be deemed 'intelligent and voluntary' if 'entered without knowledge of material information withheld by the prosecution.'"). The Government does not argue that *Sanchez* has since been overruled or is not applicable to the issue of waiver here. The Court, therefore, does not find that Petitioner's plea agreement restricts him from raising his claim for relief under *Brady*.

entrapment and outrageous government conduct, rather than pleaded guilty, had he known of certain withheld evidence. *Id.* at 1451. However, the circuit explained that, even with the withheld evidence, the "outrageous government conduct" claim was "not viable" and an entrapment defense "almost certainly would fail." *Id.* at 1454. The withheld evidence thus did not warrant relief from the defendant's plea agreement based on *Brady* because it did not create a reasonable probability from an objective perspective that, but for the failure to disclose the withheld evidence, the defendant would have gone to trial. *Id.*

The specific evidence at issue here is: (1) information relating to a surveillance camera set up around the Bundy ranch; (2) information relating to "BLM snipers"; (3) an unredacted log for a Tactical Operations Center ("TOC"). (2255 Motion 15:1–16:20). The first category of evidence concerns a surveillance camera positioned near Cliven Bundy's ranch, and an FBI 302[4] report detailing use of that camera.[5] (2255 Motion 15:1–16); (Trial Tr. 16-8:15–16-9:10, ECF No. 3049). The second category of evidence consists of FBI 302 reports that used the term "snipers" during the BLM's operations around the Bundy ranch. (Trial Tr. 16-11, ECF No. 3049). The third category of evidence resembles the second; it consists of a TOC log and related FBI 302s showing when officers were at a command center near the Bundy ranch, and it mentions "snipers" in several entries. (Trial Tr. 16-13:6–12, ECF No. 3049); (Brief Exhibit, ECF No. 3083-2). The Court previously found that parts of this evidence "potentially rebut[] the allegations of the [Tier 1 defendants'] deceit which is repeated in the superseding indictment numerous times, including the conspiracy account as an overt act in allegations number 59, 84, 88, and 92 regarding false representations that were alleged about the Bundys

---

[4] A "302" refers to an FD-302 form, which is a form used by the Federal Bureau of Investigation to report interviews conducted by agents.

[5] Petitioner states that the FBI 302 was created by Special Agent Egbert; but, as stated by the Government, the FBI 302 at issue appears to be one created by an Agent Burke. (Brief Exhibit No. 1 at 2, ECF No. 3083); (Tr. Tran. 16-8:15–22, 16-9:23–16-10:2, ECF No. 3122) (discussing the allegedly withheld evidence of a surveillance camera, and stating that "there's also an FBI 302 report prepared by the FBI about an interview with Egbert").

being surrounded, about the BLM pointing guns at them, and using snipers." (*Id.*). Moreover, the evidence "provide[d] information regarding BLM individuals wearing tactical gear, not plain clothes, carrying AR-15s assigned to the [Listening Post, Observation Post] on April 5th and 6th of 2014." (Trial Tr. 16-11:20–16-12:7, ECF No. 3049).

Petitioner argues that the identified categories of evidence are relevant to his defenses, as they were to the Tier 1 defendants, because the evidence goes to his intent in coming to Nevada: to defend against the "provocative nature of the BLM agents and the danger to [Cliven Bundy's family]," rather than to impede lawful orders. (2255 Motion 3:25–27, 25, 23:8–11, 31:22–32:5), ECF No. 3365); (Reply 10:21–28, 11:11–21, ECF No. 3419). In response, the Government argues that the evidence was potentially favorable only to the Tier 1 defendants, not Petitioner. (Resp. 10:15–16, ECF No. 3386). The evidence, according to the Government, thus does not warrant relief because it does not violate *Brady* as to Petitioner and, in any event, is "legally insufficient to support a cognizable defense." (*Id.* 12:20–21:4).

The Court agrees with the Government, and finds that Petitioner has not satisfied his burden to support relief based on *Brady* violations. First, even if the evidence were available to Petitioner before he pleaded guilty, he does not articulate how his claimed defenses ("defense of others" and "self-defense") would have then applied to his case. That is, Petitioner points to *United States v. Morton*, 999 F.2d 435 (9th Cir. 1993), for the position that self-defense is available when "excessive force" is used by a government official. (Reply 16:25–28, ECF No. 3419); *see Morton*, 999 F.2d at 437–38. Petitioner broadly asserts that, because the Court found the evidence potentially relevant to Cliven Bundy's claims of self-defense, "it is relevant to [Petitioner's] intent who came out solely based on Cliven's plea of danger." (Reply 16:21–28). However, Petitioner does not identify an instance where government officials used excessive force that could warrant Petitioner's travel to Nevada on April 13, 2014—armed with assault rifles to set up patrols around the Bundy ranch for weeks to deter BLM actions. Indeed,

the purported *Brady* evidence shows otherwise; any "snipers" associated with the BLM were gone days before Petitioner's arrival in Nevada, and Petitioner does not argue differently.[6] (Brief Exhibit No. 3 at 2–4, ECF No. 3083-2); (TOC Log at 2–10, ECF No. 3083-3). Similarly, the surveillance camera identified in Petitioner's 2255 Motion and the TOC identified in the log were "deactivated" several days before Petitioner arrived in Nevada. (Brief Exhibit No. 1 at 2, ECF No. 3083); (TOC Log at 6–10, ECF No. 3083-3) (showing a report between April 5, 2014, to April 8, 2014, that the camera was "confirmed damaged by an ATV" and that the TOC was "deactivated – mission complete"). Accordingly, like in *Sanchez*, the withheld evidence would almost certainly fail to support Petitioner's claimed defenses to the charges in the Superseding Indictment. *See Sanchez*, 50 F.3d at 1454.

Second, Petitioner fails to prove a reasonable probability under an objective standard that, had the purported *Brady* evidence been disclosed, he would have risked trial against the Government's evidence. On this issue, Petitioner's central argument is that the withheld evidence would have negated the mens rea element of his crimes because it shows how "his actions were done with a defensive and protective intent and not with a threatening or ill intent." (2255 Mot. 25:22–27, ECF No. 3365). Petitioner adds that he "had no knowledge whether individuals had used force or intimidation" relating "to the overt acts constituting the conspiracy." (*Id.* 22:13–24). However, Petitioner does not discuss the purported *Brady* evidence in conjunction with the precise standards to prove the crimes for which he pleaded guilty. With Count 1, for example, of Conspiracy under 18 U.S.C. § 371, a conviction can occur "even if the defendant did not know all the conspirators, did not participate in the conspiracy from its beginning or participate in all its enterprises, or otherwise know all its

---

[6] If Petitioner seeks to argue that the Bunkerville confrontation supports excessive force to back a potential defense, such contention is without merit. The Court explained in its prior Order for another defendant, Todd Engel, that even the April 12, 2014 Bunkerville confrontation could not reasonably support a self-defense or defense of others theory based on excessive force by the Government. (Order 6:11–23, ECF No. 3293).

details." *United States v. Grasso*, 724 F.3d 1077, 1086 (9th Cir. 2013). Moreover, while the Government must show that "the defendant knew of his connection to the charged conspiracy," "there need not, of course, be proof that the conspirators were aware of the criminality of their objective." *Id.* (quoting *Ingram v. United States*, 360 U.S. 672, 678 (1959)) (quotations omitted). Additionally, for Count 16 of Interstate Travel in Aid of Extortion, the unlawful activity at issue was under Nevada Revised Statute 205.320, which makes it a crime to directly or indirectly threaten "to injure a person or property . . . with the intent to extort or gain money or other property . . . or to influence the action of any public officer." (Plea Agreement 4:5–14, ECF No. 649). The Superseding Indictment charged Count 16 under 18 U.S.C. § 2 for Aiding and Abetting, meaning that "the intent requirement is satisfied when a person actively participates in a criminal venture with advance knowledge of the circumstances constituting the elements of the charged offense." *Rosemond v. United States*, 134 S. Ct. 1240, 1245–49 (2014); (Superseding Indictment 52:20–53:19, ECF No. 27).

With those standards in place, the Government's evidence included, among other things, Petitioner's own statements that: he came to Nevada to go on an "offense" after agreeing to help Cliven Bundy with the BLM's actions; he drove from New Hampshire to Nevada, stopping in Utah on April 12, 2014, to "zero-in" the firearms he brought with him through live firing; Petitioner organized a camp of supporters to conduct patrols and security checkpoints around the Bundy ranch for weeks after the Bunkerville confrontation; and, on at least one occasion, he supplied an armed "escort to Ryan Bundy and another cowboy . . . to round up calves the [BLM] had left abandoned" in an effort to "provide protection to these cowboys." (Sentencing Mem. 13:1–13, 14:19–23, 15:9–15, ECF No. 2005). Petitioner does not challenge the veracity of the Government's evidence or its admissibility at trial. Nor does Petitioner demonstrate how the purported *Brady* material weakens the Government's evidence or lessens its ability to prove each element of his charged crimes. He, consequently, has not shown how

the withheld evidence identified in his 2255 Motion is objectively and sufficiently persuasive such that it could diminish the Government's evidence to the point that, "but for the failure to disclose the *Brady* material," he would have refused to plead guilty and instead gone to trial. *Cf. Sanchez*, 50 F.3d at 1454.[7]

Without showing how the purported *Brady* evidence supports his claimed defenses, and without a reasonable probability that Petitioner would have gone to trial instead of pleading guilty if the evidence were disclosed, Petitioner's 2255 Motion does not support an entitlement to relief as argued in his first and third claims.

### ii. *Admissions at the Change-of-Plea Hearing*

Related to Petitioner's argument on *Brady* violations, he also points to several statements that he made when he first tried to withdraw his guilty plea before sentencing. For example, Petitioner asserts in his 2255 Motion that he "did not admit to the acts necessary to support a finding he intimidated a public officer" in violation of Nevada Revised Statute 205.320, because all he said when asked about such action was "I was advised to say yes." (2255 Motion 37:20–22, ECF No. 3365). Petitioner then relies on this uncommitted statement, and others, to argue that, had he known of the Government's withheld evidence, he would have stayed true to his belief in a defense, rejected any guilty plea, and gone to trial.

These arguments about wavering statements during the plea hearing are nearly identical to those previously addressed by the Court in its Order denying withdrawal of the plea, (ECF No. 1953). Petitioner has not shown reason for the Court to now depart from its ruling. (*See* Order 3:3–8:16, ECF No. 1953). Namely, with regard to Petitioner's answer that he was "advised to say yes" to violating NRS 205.320, the Court pointedly asked during the plea hearing, "do you accept that advice?," to which Petitioner responded, "I'm sorry, I'm just

---

[7] Petitioner also fails to demonstrate how the purported *Brady* evidence would have impacted the numerous other counts against Petitioner that are listed in the Superseding Indictment, which Petitioner would have faced had he gone to trial instead of pleading guilty. (*See* Superseding Indictment, ECF No. 27).

trying to be very careful in my answers so that they're as accurate as best as I can make them. Yes." (COP Tr. 34:23–35:21, 36:2–14, ECF No. 942). The Court similarly asked other follow-up questions throughout Petitioner's plea hearing to ensure that Petitioner was, in fact, intelligently and voluntarily electing to plead guilty. (*Id.* 6:4–38:7). Those follow up questions centered on the precise facts to which Petitioner was admitting, his state of mind, his knowledge of the elements that the Government would have to prove at trial, and how his admissions support a conviction for the charges in the plea agreement. (*Id.*). Petitioner has not persuaded the Court to find that his prior admissions of fact and guilt should now be deemed involuntary because, at the time of his plea, he lacked the specific evidence identified in his 2255 Motion. *Cf. United States v. Ruiz*, 536 U.S. 622, 630 (2002) (citing various cases from the US Supreme Court for the principle that "the Constitution . . . permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor").

### B. Petitioner's Second Claim for Relief

The second claim for relief in Petitioner's 2255 Motion asserts that his prior counsel, Brian J. Smith, provided ineffective assistance in violation of the Sixth and Fourteenth Amendments because: (1) he advised Petitioner to accept the guilty plea without requesting production of discovery in support of Petitioner's claims; and (2) he failed to advise Petitioner about the essential elements of the charges against him. (2255 Motion 32:26–34:28). Petitioner contends that Smith "did not investigate or attempt to develop a defense based on what Petitioner told him of why he came to Nevada." (*Id.* 34:17–28).

"[T]he two-part *Strickland v. Washing*ton test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). The first part of the *Strickland* test requires Petitioner to prove that Smith's representations "fell below an objective standard of reasonableness" under "prevailing professional norms." *Strickland v.*

*Washington*, 466 U.S. 668, 688 (1984). One constant aspect of providing competent counsel is the duty to "make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* at 691.

The second part of the *Strickland* test concerns a "prejudice" requirement, and it focuses on "whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 58. It requires Petitioner to "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* "[W]here the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination [of] whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea." *Id.* at 59. "This assessment, in turn, will depend in large part on a prediction [of] whether the evidence likely would have changed the outcome of a trial." *Id.*

Petitioner has not proven that Smith's performance was deficient under either part of the *Strickland* test. Regarding Petitioner's claim that Smith failed to investigate or attempt to develop a defense, that stands in direct contradiction to Smith's filings made prior to Petitioner's guilty plea. Those filings reveal that Smith was aware of Petitioner's claimed defense of being a "peacemaker" resembling "a neutral arbiter between the Bundy group and law enforcement" as an "attempt to curb the chance of violence" rather than act as a "violent or reckless 'barn burner.'" (Reply 2:5–12, ECF No. 397). Smith also diligently pursued, and focused on, discovery for "critical" aspects of Petitioner's defense: that he did not arrive at the Bunkerville confrontation until it was over. (Mot. Sever 6:25–7:8, ECF No. 566). In pursuing those theories of defense, Smith claims he received "1.4 terabytes of digitalized information and over 7,400 pages of investigative reports." (Reply 3:1–5, ECF No. 611) (filed roughly one-month before Petitioner pleaded guilty). Smith's efforts reveal an objectively reasonable

standard of investigation and preparation for potential defenses, and Petitioner has not provided an argument to reveal those active efforts as inadequate. *United States v. Ferreira-Alameda*, 815 F.2d 1251, 1253 (9th Cir. 1987) ("Review of counsel's performance is highly deferential and there is a strong presumption that counsel's conduct fell within the wide range of reasonable representation.").

Even if Smith's investigation were inadequate, Petitioner fails to prove resulting prejudice to satisfy the second part of the *Strickland* test. As previously discussed, the non-disclosed evidence identified in the 2255 Motion would almost certainly fail to support Petitioner's claimed defenses. Accordingly, there is not a likelihood that Smith would have changed his recommendation for Petitioner to plead guilty and not risk trial on the eleven counts charged in the Superseding Indictment if he was aware of the non-disclosed evidence. *Cf. Lambert v. Blodgett*, 393 F.3d 943, 982 (9th Cir. 2004) ("Where the alleged error is counsel's failure to investigate a potential defense, the salient inquiry is whether 'discovery of the evidence would have led counsel to change his recommendation as to the plea.'"); (*see* Superseding Indictment, ECF No. 27). Accordingly, Petitioner has not satisfied his burden to show ineffective assistance of counsel warranting relief from his sentence.

### C. Evidentiary Hearing

28 U.S.C. § 2255 instructs courts to hold an evidentiary hearing for habeas petitions, such as Petitioner's, "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984).

The Court finds that an evidentiary hearing is unnecessary here because the record before the Court provides an adequate basis to consider and resolve Petitioner's arguments. *See Shah v. United States*, 878 F.2d 1156, 1160 (9th Cir. 1989) (citation omitted). This record includes the transcript of Petitioner's plea hearing, transcripts of in-court discussions on the

alleged *Brady* evidence, and filings throughout this case addressing the specific issues raised in the 2255 Motion. Moreover, Petitioner does not allege that an evidentiary hearing would supplement, correct, discredit, or challenge the information in the already-established record.

### D. Certificate of Appealability

Petitioner must receive a certificate of appealability from the Court to proceed with an appeal of this Order. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski*, 435 F.3d 946, 950–51 (9th Cir. 2006); *see also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001). To warrant a certificate of appealability, Petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). He bears the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Slack*, 529 U.S. at 483.

The Court has considered the issues raised by Petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appealability, and determines that none of the issues meet that standard. The Court will therefore deny Petitioner a certificate of appealability.

## IV. <u>CONCLUSION</u>

**IT IS HEREBY ORDERED** that Petitioner's 2255 Motion, (ECF No. 3365), is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner's Motion for Hearing, (ECF No. 3364), is **DISMISSED as moot**.

**IT IS FURTHER ORDERED** that a Certificate of Appealability is **DENIED**.

**DATED** this __12__ day of July, 2019.

_____
Gloria M. Navarro, Chief Judge
United States District Court